Opinion issued July 22, 2004



     












In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00384-CR




MARVIN R. SCHULZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 943823




MEMORANDUM OPINION

          A jury convicted appellant Marvin R. Schulz of murder. After finding one
enhancement true, the jury assessed punishment at confinement in prison for 50 years. 
Schulz contends that (1) the trial court erred in not allowing evidence of a victim’s
past history of violence, and in failing to include an instruction on self-defense; (2)
the evidence is legally insufficient to support transferred intent; and (3) the trial court
erred in denying his motion to suppress. We conclude that the trial court did not err,
and that legally sufficient evidence supports the verdict. We therefore affirm.
Background
          In August 2002, Schulz drove the complainant, Barbara Witte, to her
employment at an icehouse. Schulz remained at the bar to drink while Witte served
drinks. Clifton Sellers and a man named “Purdy” also were drinking at the icehouse. 
Sellers and Purdy left the premises after Schulz and Purdy argued. Other icehouse
patrons also left, because Schulz was “drunk and mouthing.” 
          Later that evening, Sellers and Purdy returned to the icehouse. This time,
Sellers and Schulz had an argument. It ended when Schulz announced he was going
home to retrieve his gun, and drove away. When Schulz returned to the icehouse
parking lot, Witte looked outside the icehouse door and said, “No. Go put it up.” 
Witte also told Sellers to leave. As Sellers walked to the door to leave, Schulz shot
him, through Witte, who stood in front of Sellers. Sellers ran to a convenience store
across the street and called the police.
          Officer B. Davis arrived on the scene and asked Sellers what happened. Sellers
replied that, “Marvin shot me through his old lady.” Officer Davis walked into the
bar and found Schulz sitting nearby, smoking a cigarette. Officer Davis asked what
happened, and Schulz replied, “I did it, sir. I shot her.” Officer Davis took Schulz
into custody and recovered a gun from inside Schulz’s truck. 
Analysis
Self-Defense
          Schulz contends that the trial court erred in not including an instruction on self-defense. 
          A trial court should charge a jury on any defensive issue raised by the evidence,
“regardless of its substantive character.” Brown v. State, 955 S.W.2d 276, 279 (Tex.
Crim. App. 1997). Brown states:
A defendant is entitled to an affirmative defensive instruction on
every issue raised by the evidence regardless of whether it is
strong, feeble, unimpeached, or contradicted, and even if the trial
court is of the opinion that the testimony is not entitled to belief. 
The defendant’s testimony alone may be sufficient to raise a
defensive theory requiring a charge.

Id. (quoting Williams v. State, 630 S.W.2d 640, 643 (Tex. Crim. App. 1982)). 
Accordingly, the trial court should have instructed on self-defense using deadly force
if the evidence shows that (1) Schulz used deadly force; (2) he reasonably believed
his use of deadly force was immediately necessary to protect himself against a use of
deadly force by Sellers; and (3) a reasonable person in Schulz’s position would not
have retreated. See Tex. Penal Code Ann. §§ 9.31, 9.32 (Vernon 2003). 
          A person is justified in using force against another when, and to the degree, he
reasonably believes the force is immediately necessary to protect himself against the
other’s use or attempted use of unlawful force. Id. § 9.31. A person is justified in
using deadly force against another (1) if he would be justified in using force against
the other under section 9.31; (2) if a reasonable person in the actor’s situation would
not have retreated; and (3) when and to the degree he reasonably believes the deadly
force is immediately necessary to protect himself against the other’s use or attempted
use of unlawful deadly force. Id. § 9.32. A “reasonable belief” means a belief that
would be held by an ordinary prudent person in the same circumstances as the actor. 
Id. § 1.07(a)(42) (Vernon Supp. 2004).
          Schulz contends that he raised evidence entitling him to a self-defense
instruction. We disagree. The record reflects that Sellers became belligerent when
Schulz stopped playing pool. Sellers told Schulz that, “I’m going to kick your ass.” 
After this threat, Schulz left the bar and returned home. Because he had to drive
Witte home, he returned to the icehouse, but with a pistol in his truck. Schulz sat
down at the bar and continued to drink. Sellers continued making threats. Schulz
testified that he stated, “If you don’t leave me alone, I am going to shoot you” or “I
am going to go get my pistol or something to that effect.” Because Sellers continued
bullying him, Schulz walked out of the icehouse, retrieved his pistol from his truck,
and returned to his seat at the bar. 
          Schulz testified that later in the evening, Sellers grabbed his shoulder from
behind him. Schulz stood up from his bar stool, took out his pistol from his back
pocket, and fired two shots. Schulz testified that when Sellers grabbed his shoulder
from behind, he was afraid for his life, and believed that Sellers could inflict serious
bodily injury. He could not see whether Sellers had anything in his hands, so that he
had no idea if Sellers carried a beer bottle. Schulz admitted that when he went to
retrieve his pistol from the truck, he had the opportunity to leave. 
          Schulz offered no testimony or evidence that Sellers used or attempted to use
deadly force against him at the time he shot Sellers and Witte. Schulz did not see
anything in Seller’s hands, and Sellers did not use or attempt to use deadly force. 
Schulz’s speculation that because he did not know whether Sellers carried a beer
bottle in his hand, and thus he might have had one, is not evidence of an attempt or
use of deadly force. See Starks v. State, 127 S.W.3d 127, 132–33 (Tex.
App.—Houston [1st Dist.] 2003, no pet.). Moreover, Schulz did not present evidence
to show that a reasonable person could not have retreated when Sellers allegedly
grabbed his shoulder. See Tex. Penal Code. Ann. § 9.32(a)(2). The trial court thus
properly denied the request for a self-defense instruction. 
          Schulz further contends that the trial court erred in not allowing him to present
evidence regarding Sellers’s violent history. 
          Generally, a defendant in a murder prosecution who raises the issue of self-defense may introduce evidence of the victim’s violent character. Tex. R. Evid.
404(a)(2); Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). The
defendant may offer opinion or reputation testimony to prove the victim acted in
conformity with his violent nature. Tex. R. Evid. 404(a)(2); Torres, 71 S.W.3d at
760. Specific, violent acts of misconduct may be admitted to show the
reasonableness of the defendant’s fear of danger or to show that the victim was the
first aggressor. Torres, 71 S.W.3d at 760; Mozon v. State, 991 S.W.2d 841, 845–46
(Tex. Crim. App. 1999). Because we have held that the trial court properly denied
Schulz’s request for an instruction on self-defense, evidence of Seller’s violent past
is not relevant. Torres, 71 S.W.3d at 760–61; Hernandez v. State, 969 S.W.2d 440,
445 (Tex. App.—San Antonio 1998, pet. ref’d). We hold that the trial court did not
abuse its discretion in refusing to admit the evidence.
Legal Sufficiency
          Schulz contends that the evidence is legally insufficient to show that he caused
Witte’s death by way of transferred intent, because Witte’s conduct – jumping in front
of Sellers and into the path of the bullet – is an intervening and superseding cause of
her death.
          In reviewing a legal insufficiency claim, we view the evidence in the light most
favorable to the verdict and decide whether a rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). 
          A person commits the offense of murder when he either (1) intentionally or
knowingly causes the death of another; or (2) intends to cause serious bodily injury
and commits an act clearly dangerous to human life that causes the death of another. 
See Tex. Penal Code Ann. § 19.02(b)(1)-(2) (Vernon 2003). 
          The doctrine of transferred intent is codified in section 6.04(b) of the Texas
Penal Code, which provides:
          (b)     A person is nevertheless criminally responsible for causing a
result if the only difference between what actually occurred and
what he desired, contemplated, or risked is that:
 
                    (1)     a different offense was committed; or
 
                    (2)     a different person or property was injured, harmed, or
otherwise affected.

Tex. Penal Code Ann. § 6.04(b) (Vernon 2003).
          The jury charge correctly included a proper instruction on transferred intent. 
Section 6.04(b) applies to these facts because the State presented evidence that Schulz
intended to cause serious bodily injury to Sellers, and as a result, caused Witte’s
death. Schulz contends that Witte’s conduct is a superseding cause because she
moved in front of the bullet aimed at Sellers. Under the Texas Penal Code, however,
Schulz is nevertheless criminally responsible for causing Witte’s death because the
statute provides that intent is transferred when another person is injured by the
defendant’s act. See id. We therefore conclude that legally sufficient evidence
supports Schulz’s conviction through the transferred intent doctrine. 
Motion to Suppress
          Schulz contends that the trial court abused its discretion in denying his motion
to suppress his pretrial confession. We review a trial court’s ruling on a motion to
suppress evidence for abuse of discretion. Villarreal v. State, 935 S.W.2d 134, 138
(Tex. Crim. App. 1996); Taylor v. State, 945 S.W.2d 295, 297 (Tex. App.—Houston
[1st Dist.] 1997, pet. ref’d). A confession is admissible if the confession was freely
and voluntarily made. Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 1979). In
reviewing the voluntariness of a confession on appeal, we defer to the trial court’s
determination of historical facts in a suppression hearing. State v. Ross, 32 S.W.3d
853, 856 (Tex. Crim. App. 2000). Intoxication, although relevant, does not render a
confession involuntary per se. Jones v. State, 944 S.W.2d 642, 651 (Tex. Crim. App.
1996). Instead, the question becomes whether the defendant’s intoxication rendered
him incapable of making an independent, informed decision to confess. Id.
          At a hearing to suppress evidence, the trial court is the sole judge of the weight
and credibility of the evidence, and we do not disturb a trial court’s finding on appeal
absent an abuse of discretion. Alvarado v. State, 853 S.W.2d 17, 23 (Tex. Crim. App.
1993). In reviewing a ruling on a question of application of law to facts, we review
the evidence in the light most favorable to the trial court’s ruling. Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). For Schulz’s confession to be
involuntary, we must conclude that he was unable to make an independent, informed
choice of free will at the time he made it. See Jones v. State, 944 S.W.2d 642, 651
(Tex. Crim. App. 1996). 
          The evidence reflects that Officer N. Bozeman met with Schulz around 2:00
a.m. after the shooting. Officer Bozeman testified that, before taking his statement,
she read Schulz his constitutional rights. In the course of reading him his rights,
Schulz interrupted Bozeman, and stated that “he had already been read his rights out
at the scene and that he wanted to waive them.” Officer Bozeman then began
recording Schulz’s statement which lasted about an hour. Officer Bozeman smelled
alcohol on his breath, but she perceived that he understood the proceedings. She
formed her conclusion because Schulz did not slur his words and did not walk with
any difficulty. He made perfect sense to Officer Bozeman, and did not make any
inappropriate responses to her questions. She testified that Schulz did not appear to
be intoxicated at the time he gave his statement, and he could have driven a car. 
          Officer R. Walker talked with Schulz after he recorded his witness statement. 
Officer Walker reviewed the statement with Schulz, who was crying and emotional
at the time. Officer Walker asked Schulz if he understood his statement and Schulz
responded, “yes.” Officer Walker concluded that Schulz was intoxicated based on
a very strong odor of alcohol. He agreed with Officer Bozeman that Schulz could
walk on his own and did not slur his words. Officer Walker stated, “I firmly believe
that he [knew] what was going on. I believe that he knew what he was doing.” 
Officer B. Davis, who responded to the scene, believed that Schulz understood his
questions, but would not have let Schulz drive home. T. Cox testified on behalf of
Schulz. She testified that Schulz started drinking alcohol at 4:00 p.m. and continued
to drink up until the time she left at 11:00 p.m. She opined that he was “pretty drunk”
on the night of the shooting.
          The trial court thus heard extensive testimony regarding Schulz’s condition,
and whether he understood the content of his statement, including testimony that
supports the trial court’s ruling. We defer to the trial court’s determination of these
facts, and therefore, we find no abuse of discretion in the finding that Schulz’s
confession was voluntary. Accordingly, the trial court properly denied the motion to
suppress.
 
 
 
 
 
 
 
 
 
Conclusion
          We conclude that the trial court did not err in the admission of evidence or in
instructing the jury. We further conclude that legally sufficient evidence supports the
jury’s intent finding, as the law transfers the intent to kill one person to another killed
as a result of the defendant’s conduct. We therefore affirm the judgment of the trial
court.


                                                             Jane Bland
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Bland and Benton.



Do not publish. Tex. R. App. P. 47.2(b).